UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANNE B. STOLOFF,

        Claimant,

v.                                                        Case No: 6:23-cv-0001-DCI

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## ORDER

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying an application for disability insurance benefits. In a decision dated June 1, 2022, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from December 31, 2019, through the date of the decision (20 CFR 404.1520(f)). R. 30.

Having considered the parties' briefing and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

    **I.**    **Issues on Appeal**

Claimant raises three issues on appeal:

(1) Whether the ALJ's RFC is unreasonable and not supported by substantial evidence;

(2) Whether the ALJ properly accounted for Claimant's symptoms and limitations given her medically determinable impairment of fibromyalgia; and

(3) Whether the ALJ erred in failing to fully account for Claimant's mental limitations

Doc. 24.

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March

22, 2017, 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[1] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.[2] In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

[2] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

### III.   Discussion

#### A. Whether the ALJ's RFC is unreasonable and not supported by substantial evidence

The crux of Claimant's argument is that her self-reported symptoms and limitations are consistent with the record evidence and that the ALJ's determination regarding Claimant's ability to stand/walk is not supported by the record. Specifically, Claimant contends that the ALJ's finding that Claimant, a woman of near-retirement age, can stand/walk for 6 hours each day is patently unreasonable and not supported by substantial evidence. Doc. 24.

The ALJ found that Claimant has the following severe impairments: diabetes mellitus; inflammatory arthritis; and degenerative disc disease of the lumbar spine. R. 19. With respect to the RFC, the ALJ found that Claimant could:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; can occasionally climb ramps, stairs, ropes, ladders, or scaffolds; can frequently balance on even terrain and occasionally on uneven terrain; can occasionally stoop, kneel, crouch, and crawl; can frequently handle and finger with bilateral upper extremities; can tolerate no exposure to hazards; and needs to change positions every hour for five minutes from sitting to standing or from standing to sitting.

R. 24.

In addition to the objective evidence of record, the Commissioner must consider all a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 416.929(a). A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability, however. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on subjective symptoms, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If this step is satisfied, the ALJ then "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929(c). In evaluating intensity and persistence, the ALJ considers "all of the available evidence from [a claimant's] medical sources and nonmedical sources[,]" including objective medical evidence, daily activities, precipitating and aggravating factors, medications and treatments available to alleviate symptoms, the type, dosage, effectiveness and side effects of medications, and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5–7. If the ALJ elects not to credit a claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). In the end, subjective complaint evaluations come within the province of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted). A reviewing court will not disturb a clearly articulated finding regarding a

claimant's subjective complaints supported by substantial evidence in the record. *Id*. (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam)).

Here, the ALJ acknowledged Claimant's testimony and allegations regarding the arthritic swelling and pain and the associated flares; degenerative disc disease and contributing pain; and her polyneuropathy requiring the use of an insulin pump. R. 25. The ALJ noted that Claimant testified that she has difficulties lifting, squatting, standing, reaching, walking, sitting, kneeling, climbing stairs, and using her hands. *Id*. The ALJ found that Claimant's husband's report corroborates her testimony and allegations. *Id*.

However, the ALJ found "[a]fter careful consideration of the evidence," that while Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

In reaching this conclusion, the ALJ noted that the Administration contracted experts to review Claimant's medical record to assess her abilities, including Dr. E. Nakhuda, M.D., an internal medicine expert, and Dr. Karen Sarpolis, M.D., a certified internal medical expert. The physicians opined that Claimant could perform light work with limitations. R. 25-26. With respect to Claimant's reports of daily activity, the ALJ noted that the State Agency reviews found that Claimant's arthritic flare-ups were only occasional and Claimant "otherwise had generally normal functioning." R. 26. The ALJ found that "[t]heir findings are well supported by their analysis." R. 26.

The ALJ also stated that the Administration accepted treating source statements including Dr. Michael Albert, M.D.'s assessment and found that the physician "provided [an] incomplete

and conclusory analysis to support his opinion" and "there is little to support Dr. Albert's extreme opinion." R. 26. Further, the ALJ considered Claimant's treatment history and her reports of pain and symptomology in the reports. R. 27. The ALJ found that "[e]ven taking the claimant's reports with the greatest benefit of every possible doubt, they only establish three periods of hand swelling during a ten-month period." R. 28. The ALJ ultimately determined that Claimant's daily activities supported a higher level of functional activity than what Dr. Albert found:

> Overall, this conservative treatment record is more consistent with the State Agency assessments than Dr. Albert's extreme conclusions, or the claimant's allegations. The record lacks the extensive treatment and persistent symptomology that would be consistent with either Dr. Albert or the claimant.

R. 28.

Upon due consideration, the Court finds no reversible error. The Court finds that the ALJ more than adequately explained why the ALJ partially discredited Claimant's testimony and allegations. The ALJ sufficiently discussed Claimant's subjective testimony and reports in comparison to the medical record, and the ALJ provided explicit and adequate reasons for rejecting Claimant's subjective complaints. Even though Claimant may disagree with the ALJ's determination, there is no showing that the RFC was not supported by substantial evidence.

It seems that Claimant's position is based in an assertion that there is record evidence that counters the ALJ's finding. *See* Doc. 24 at 7-9, 12. Claimant argues that "the record 'as a whole' supports and does not contradict [Claimant's] description of her limitations causing her inability to work, and the ALJ's rationales do not reasonably or logically support a conclusion to the contrary." Doc. 24 at 12. While Claimant argues to the contrary in the Reply, the first assignment of error essentially invites the Court to reweigh the evidence that the ALJ adequately considered. The Court will not do so. *See Winschel*, 631 F.3d at 1178; *see also Borges v. Comm'r of Soc. Sec.*, 771 Fed. Appx. 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that

would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

Finally, to the extent Claimant's first assignment of error goes beyond the ALJ's treatment of her subjective complaints and includes a direct challenge to the ALJ's assessment of Dr. Albert opinion,[3] the Court finds that the ALJ adequately addressed the supportability and consistency factors in relation to the ALJ's determination that Dr. Albert's opinion was unpersuasive. R. 26-27, 28. In other words, the ALJ sufficiently evaluated Dr. Albert's opinion.

### B. Whether the ALJ properly accounted for Claimant's symptoms and limitations given her medically determinable impairment of fibromyalgia

On the second assignment of error, Claimant contends the ALJ failed to properly account for Claimant's symptoms and limitations given her medically determinable impairment of fibromyalgia. Doc. 24 at 12. As an initial matter, the Court finds that Claimant raises this issue in an insufficient manner. "Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived." *Battle v. Comm'r of Soc. Sec.*, 787 Fed. App'x 686, 687 (11th Cir. 2019) (citations omitted); *see also Howze v. Soc. Sec. Admin.*, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022) ("Because [the plaintiff] cites to no authority for this argument, she has abandoned it"); *Jacobus v. Comm'r of Soc. Sec.*, 664 Fed. Appx. 774, 2016 WL 6080607, at *3 n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Binder v. Comm'r of Soc. Sec.*, 2019 WL 1397923, at *2 (M.D. Fla. Mar. 28, 2019) ("Abandonment is not cured by raising the issue for the first time in the reply brief.").

---

[3] Claimant asserts that the ALJ's "rationales" with respect to Dr. Albert's opinion are "inaccurate and inapt." Doc. 24 at 11.

The entirety of Claimant's analysis is that "the ALJ's finding that [Claimant's] fibromyalgia is medically determinable without further discussion causes a 'ripple effect' of errors at the later steps of the sequential evaluation. There is *simply no way to determine how, or if, the ALJ accounted for this impairment*, an error that can only be addressed by remanding the case." Doc. 24 at 13 (emphasis in original). This conclusory statement with only a general "remind[er]" to the Court that the RFC must be based on all evidence, does nothing to assist the Court in making a determination on this issue.

Even if the argument is not deemed waived, the Claimant still has not demonstrated entitlement to relief on this assignment of error. At step two of the evaluation process, an ALJ must decide whether a claimant has a medically determinable impairment that is severe or a combination of impairments that together are severe. 20 C.F.R. 404.1520(c). Here, the ALJ found that Claimant has the following severe impairments: diabetes mellitus; inflammatory arthritis; and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)). R. 19.

> With respect to Claimant's fibromyalgia, the ALJ found:
>
> SSR 12-2p establishes the rules for a diagnosis of fibromyalgia. If the claimant can show in the medical record that their condition is sufficient to establish a diagnosis of fibromyalgia by the 1990 ACR Criteria for the Classification of Fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria, then it must be found that the claimant has a medically determinable impairment of fibromyalgia. The 1990 ACR Criteria require the presence of trigger points, and the 2010 ACR Preliminary Diagnostic Criteria requires evidence that other disorders which could cause the claimant's fibromyalgic symptoms be ruled out. By either definition, the claimant has not established a medically determinable impairment of fibromyalgia. However, while SSR 12-2p requires a finding if the criteria are met, it does not prevent the Administrative Law Judge from finding that the claimant still has fibromyalgia if the specific requirements are not met. In this case, general considerations support a medically determinable impairment of fibromyalgia, based on the claimant's history of pain, in congruence with the numerous diagnoses of fibromyalgia by other treating physicians.

R. 22.

Step two "acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, the finding of a single severe impairment satisfies step two. *See id.*

"[B]eyond the second step, [however,] the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F.App'x 837, 842 (11th Cir. 2014); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (finding that even if substantial evidence does not support the ALJ's finding that the claimant's mental impairments were non-severe, the decision could be harmless if the ALJ proceeded in the sequential evaluation, duly considered the claimant's mental impairment when assessing his RFC and reached conclusions about the Claimant's mental capabilities supported by the evidence.). The failure to find additional severe impairments is harmless error if the ALJ considers all the claimant's impairments (severe and non-severe) in combination throughout the rest of the sequential evaluation process. *See, e.g., Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914-915 (11th Cir. 2014); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014).

While raised in a perfunctory manner, it appears that it is Claimant's contention that the ALJ erred because she failed to "mention" fibromyalgia in the remainder of the decision. Doc. 24 at 13. Claimant is correct that the ALJ did not repeat the word "fibromyalgia" beyond step two, but the Court disagrees with Claimant's characterization of the decision or any argument that the ALJ failed to consider the impairment after step two. Namely, the ALJ found that fibromyalgia is a medically determinable impairment, in part, "based on the claimant's history of pain." R. 22.

The ALJ goes on in the decision to thoroughly discuss Claimant's testimony regarding the pain along with the medical record reflecting Claimant's reports of pain and the physicians' efforts to manage the pain. R. 25, 27, 28.

For example, Claimant contends that she testified that her fibromyalgia causes aches all over her neck, shoulders across her upper back, throughout her knees, thighs, and elbows. Doc. 24 at 7, 11 n.8, citing R. 61-62, 65. The ALJ did not use the word "fibromyalgia" with respect to the RFC determination, but the ALJ specifically considered the record with respect to Claimant's reports of pain or lack thereof in her back and knees. R. 27. Again, the ALJ made clear that she based the fibromyalgia finding on a review of Claimant's history of pain and the ALJ's articulate discussion of that history establishes that the fibromyalgia was considered in combination with the other impairments during the rest of the sequential evaluation process.

Similarly, the ALJ specified that the medical determinable impairment finding was also based on "other treating physicians" diagnoses of fibromyalgia. R. 22. After step two, the ALJ specifically considered the medical record reflecting those diagnoses and Claimant's medical history of fibromyalgia. *See* e.g., R. 27, citing 11F at 13; R. 28, citing Ex. 3F at 5, 11; 16F at 115; 11F at 15. So, while the ALJ does not "mention" fibromyalgia by name after step two, the Court disagrees that the ALJ failed to properly consider it at the later stages of the decision.

Indeed, the ALJ notably found with respect to the RFC that the Claimant's "medically determinable impairments" could reasonably be expected to cause the alleged symptoms. R. 25. As stated, the ALJ found that Claimant's "medically determinable impairments" included fibromyalgia (R. 22), and the Court sees no reason why the ALJ would have to specifically repeat which impairments fall within that category to demonstrate an adequate analysis.

Overall, Claimant has not demonstrated that she is entitle to relief with respect to the second assignment of error.[4]

### C. Whether the ALJ erred in accounting for Claimant's mental limitations

In the third assignment of error, Claimant's argument is two-fold: the ALJ improperly rejected Claimant's treating psychologist's opinion <u>and</u> failed to include an RFC limitation even though the ALJ assessed a mild mental limitation. Doc. 24 at 15. The ALJ addressed Claimant's mental impairments in step two of the sequential evaluation and explained why Claimant's impairments were not severe. The ALJ found that Claimant's determinable mental impairments of depression, anxiety, and post-traumatic stress disorder did not cause more than minimal limitation in Claimant's ability to perform basic mental work activities. R. 20.

In reaching this conclusion, the ALJ discussed and considered the opinion of Dr. Perdue—Claimant's treating psychologist. Claimant contends that Dr. Perdue's opinion "cannot be reasonably disputed" and establishes that Claimant has poor or no ability to deal with the public, work stress or maintain attention/concentration and would be absent more than four days per month and off task greater than 20% of a workday. *Id*. at 16-17. It is Claimant's position that the evidence supports Dr. Perdue's position and the ALJ "did not reasonably find to the contrary."

---

[4] The Court notes that in the Reply Claimant argues that the ALJ erred in failing to make a severity finding with respect to the fibromyalgia. Doc. 26 at 3. The argument is waived as it is perfunctory. *See Jacobus*, 664 F. App'x at 774. To the extent it is not waived, the Court does not necessarily agree that the ALJ failed to make such a finding. The ALJ listed the medically determinable impairments she deemed severe. R. 19. Although the ALJ made a specific finding that fibromyalgia was an impairment, she did not include it in the list. The absence seems to reflect that the ALJ found that it was non-severe. Also, step two is satisfied with a finding that one impairment is severe. So, even if the ALJ failed to make a "severity finding," it seems the ALJ's analysis at step-two was still sufficient. But even if it was not, any error is harmless because the ALJ adequately considered the impairment in the remainder of the decision in combination with the other impairments. In other words, the Court finds that there is no merit to Claimant's argument even if it was not waived.

Doc. 24 at 18. In support of her argument, Claimant points to the medical evidence from a consultative psychological examination, another physician's recommendation regarding psychotherapy treatments, and her record related to depression and anxiety. *Id*. at 19. In sum, Claimant argues that Dr. Perdue's opinion is consistent with the "longitudinal evidence of record." *Id*. at 19.

Upon due consideration, the Court finds that Claimant is not entitled to relief on this assignment of error. As an initial matter, Claimant's argument regarding the ALJ's alleged improper rejection is confusing because its legal relevance is not clear. The Court understands that the ALJ's findings at step two relate to the rest of the decision, but it seems Claimant conflates the ALJ's duties at step two with the ALJ's duties at step four of the sequential process. *See* Doc. 24 at 14-15. While it appears that Claimant's assignment of error more generally relates to the RFC, to the extent Claimant asserts that the ALJ erred at step two by failing to properly consider Dr. Perdue's opinion and, in turn, failing to find that Claimant's depression, anxiety, and PTSD are severe impairments, Claimant is not entitled to relief.

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

As such, the ALJ's obligation at step two was already satisfied when she found another severe impairment, and the Court is not convinced that the ALJ's treatment of Dr. Perdue's opinion

at step two in relation to mental impairments is dispositive. Claimant certainly does not provide law or analysis to persuade the Court otherwise.

Even so, to the extent the ALJ was required to provide a specific analysis to support her rejection of Dr. Perdue's opinion, the Court still finds that the ALJ's treatment of the opinion was sufficient and based on substantial evidence. At step two, the ALJ's discussion of Drs. Perdue, Roskes, and Lake relates to the ALJ's analysis of the four functional areas known as "paragraph B" criteria. R. 20-21. The ALJ considered the "paragraph B" criteria and ultimately found that Claimant has only mild limitations in the functional areas of interacting with others and in adapting or managing oneself. R. 21. In reaching this conclusion, the ALJ discussed at length Dr. Perdue's opinion and adequately compared it to her own record and Drs. Lake and Roskes' opinions. *See* R. 20-21.

With respect to supportability, the ALJ cited to Dr. Perdue's record and found that the physician provided no analysis or citation to the record to support her conclusions related to Claimant's ability to deal with the public, handle work stress, maintain concentration, and attendance at work. R. 21. The ALJ found that Dr. Perdue's opinion was unsupported as it appears that it was "based on the presence of impairments, rather than objective mental examinations." *Id*. As to consistency, the ALJ found that the record was most consistent with Dr. Lake and Dr. Roskes' findings and compared their opinions to that of Dr. Perdue. R. 21. In conclusion, the ALJ found that:

> These findings are consistent with Dr. Lake and Dr. Roskes' conclusions. They are inconsistent with Dr. Perdue's opinion. Dr. Perdue's opinion is unpersuasive, and the findings by Dr. Lake and Dr. Roske are persuasive and adopted.

R. 21.

Based on the foregoing, the Court finds there is no merit to Claimant's argument that the ALJ improperly rejected Dr. Perdue's opinion. The ALJ's analysis was thorough and supported

by substantial evidence. Further, as with the first assignment of error, the Court rejects Claimant's clear invitation to reweigh the evidence.

That said, it appears Claimant's third assignment of error goes beyond step two. Indeed, Claimant argues that "even considering only the ALJ's finding that [Claimant] has mild mental impairments, [the ALJ] erred in failing to consider how they affect [Claimant's] ability to perform her past skilled job." R. 24. Claimant also asserts that the "ALJ's RFC must not only account for all impairments, but also for the combined effect of *nonsevere impairments*." *Id*. at 20. So, it seems that Claimant's argument regarding the ALJ's alleged failure to "fully account for Claimant's mental limitations" relates to more than step two.

Regardless, the Court finds that Claimant does not prevail on her argument. As a preliminary matter, to the extent it is Claimant's position that the ALJ was required to include the mild limitations within the RFC, Claimant is mistaken. *See Faircloth v. Comm'r of Soc. Sec.*, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) "[A]n ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria."); *Boisvert v. Comm'r of Soc. Sec.*, 2022 WL 4093065, at *7 (M.D. Fla. Sept. 7, 2022) (finding the ALJ was not required to include the mild limitation in the area of concentrating, persisting, or maintaining pace in the RFC assessment); *Sprague v. Colvin*, 2014 WL 2579629, at *6-7 (M.D. Fla. June 9, 2014) (finding that the ALJ did not err in the RFC finding by omitting mild functional limitations relating to a mental impairment.).

But Claimant is not wrong that the ALJ is required to consider the entirety of Claimant's limitations even if not severe, as the Court discussed *supra* with respect to the second assignment of error. Still, as with the fibromyalgia impairment, the Court disagrees with Claimant and finds that the ALJ did take the limitations into consideration. First, the ALJ stated that:

> The claimant has depression, anxiety, post-traumatic stress disorder (PTSD), cataracts, macular degeneration, obesity, hyperlipidemia, coronary artery disease, piriformis muscle syndrome, and neuropathy, but these are nonsevere. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

R. 19.

Since the ALJ considered the mental impairments at issue to be medically determinable impairments, the ALJ's statement cuts against Claimant's argument. *See Spencer v. Comm'r of Soc. Sec.*, 2023 WL 2674700, at *5 (M.D. Fla. Mar. 29, 2023) (overruling a claimant's objection to the magistrate judge's reliance on the ALJ's statement that he considered all of the claimant's medically determinable impairments in the formation of the RFC as "[t]here is certainly nothing inherently improper about an ALJ stating that he has done so. An ALJ's statement that he "considered all impairments" or the like only becomes problematic if the Decision demonstrates that he did not do so.") (citing *Winschel*, 631 F.3d at 1181)."

Even so, the Court recognizes that the ALJ's words might be considered boilerplate and, as such, insufficient. *See Schink*, 935 F.3d at 1269 ("Here, although the ALJ stated he 'considered all symptoms' when assessing Schink's RFC, the content of his decision demonstrates he did not."). Yet, the ALJ's consideration did not stop with this one pronouncement. In step three, the ALJ refers back to the "paragraph B" criteria analysis, in which the ALJ determined that Claimant did not show a marked limitation in social functioning, completing tasks, or adapting or managing herself—a functional category in which the ALJ found there to be a mild limitation. R. 24.

Further, in step four, the ALJ again specified that, in making the RFC determination, the ALJ considered "all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the regulation's requirements." R. 24. Also, the ALJ found in the formulation of the RFC that "[a]fter careful

consideration of the evidence, the [ALJ] found that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of the record for the reasons explained in the decision." R. 25. As with the second assignment of error, the ALJ did not limit that finding to physical impairments and previously characterized Claimant's depression, anxiety, and post-traumatic stress disorder as "medically determinable impairments." R. 20.

Also, with respect to step four, the ALJ went deeper into the record on the mental impairments when the ALJ analyzed the persuasiveness of Dr. Albert's opinion. In that analysis, the ALJ stated that the ALJ began treating Claimant on February 27, 2020 and noted that Claimant had depression with occasional panic attacks. R. 26. The ALJ stated that Dr. Albert reported objective findings on examination were normal, "including psychiatric and thought content." *Id*.

With respect to the supportability factor, the ALJ goes on to discuss the State Agency reviewers' findings and then compares Dr. Albert's record. *Id*. The ALJ found that despite Dr. Albert's report of Claimant's depression diagnosis, "she rarely took her prescribed Xanax." *Id*. The ALJ also noted that she had been on "Lexapro a while." *Id*.

Moreover, even though Claimant contends that the ALJ did not consider her mental impairments in the RFC and ultimately failed to consider "how they affect her ability to perform her past skilled job," the record belies this argument. Namely, the ALJ found that Claimant is capable of performing past relevant work as a "sales person (sewing machines) (manager)." R. 29. The ALJ specified that "[i]n comparing [Claimant's] residual functional capacity with the physical and mental demands of this work, the [ALJ] finds that [Claimant] is able to perform it as actually performed." R. 30.

Based on the foregoing, the Court finds that the ALJ adequately considered Claimant's mental limitations and the Court will not substitute its own judgment for that of the Commissioner. *See Faircloth*, 2022 WL 291218, at *2 (finding unpersuasive a claimant's assertion that the ALJ failed to address mental limitations in the RFC analysis when the ALJ specifically stated that RFC assessment reflects the degree of limitation found in the "paragraph B" criteria; the ALJ stated that all symptoms were considered in the RFC assessment; the ALJ referenced a doctor's note that the claimant suffers from anxiety and depression when evaluating the RFC assessment; and the ALJ considered the agency consultants' findings regarding mental health).

## IV.     Conclusion

Whether Claimant's arguments are read separately or in conjunction with one another, the Court finds that substantial evidence supports the ALJ's decision. The Court otherwise rejects any of Claimant's requests for the Court to reweigh the evidence. *See Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on March 27, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE